PAUL L. REIN, State Bar No. 43053
CELIA MCGUINNESS, State Bar No. 159420
CATHERINE M. CABALO, State Bar No. 248198
LAW OFFICES OF PAUL L. REIN
200 Lakeside Drive, Suite A
Oakland, CA 94612
Telephone: (510) 832-5001
Facsimile: (510) 832-4787
reinlawoffice@aol.com

Attorneys for Plaintiff
CHERYL GREEN

DAVID C. POWELL (SBN 129781)
Email: dpowell@reedsmith.com
DAVID S. REIDY (SBN 225904)
Email: dreidy@reedsmith.com
CRAIG N. BAUMGARTNER (SBN 273752)
Email: cbaumgartner@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, Ca 94105
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendant
BANK OF AMERICA, NATIONAL ASSOCIATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL GREEN,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, NA; and DOES 1-10, Inclusive,<br><br>Defendants. | Case No. C11-00648 LB<br><br>Civil Rights<br><br>**CONSENT DECREE AND [PROPOSED] ORDER AS TO INJUNCTIVE RELIEF ONLY** |

1. Plaintiff CHERYL GREEN ("Plaintiff") filed a Complaint in this action on February 11, 2011, to obtain recovery of damages for her discriminatory experiences, denial of access, and denial of her civil rights, and to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and California civil rights laws against defendant BANK OF AMERICA, NATIONAL ASSOCIATION ("BANA" or "Defendant"), relating to the condition of Defendant's public accommodations as of April 3, 2009 and continuing. Plaintiff has alleged that Defendant violated Title III of the ADA and sections 51, 52, 54, 54.1, 54.3, and 55 of the California Civil Code, and sections 19955 *et seq.* of the California Health & Safety Code by failing to provide full and equal access to its facilities at Bank of America branches located at 1400 E. 14th Street in San Leandro, California (the "San Leandro Branch") and 3067 Castro Valley Boulevard in Castro Valley, California (the "Castro Valley Branch").

2. Defendant denies the allegations in the Complaint and by entering into this Consent Decree and Order does not admit liability to any of the allegations in Plaintiff's Complaint filed in this action. Plaintiff and Defendant (hereinafter, the ("Parties") enter into this Consent Decree and Order for the purpose of resolving injunctive relief issues raised by this lawsuit as to Defendant without the need for protracted litigation and without the admission of any liability.

**JURISDICTION:**

3. The Parties to this Consent Decree and Order agree that the Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 *et seq.* and pursuant to supplemental jurisdiction for alleged violations of California Health & Safety Code sections 19955 *et seq.*; Title 24, California Code of Regulations; and California Civil Code sections 51, 52, 54, 54.1, 54.3, and 55.

-2-

CONSENT DECREE & ORDER
Case No. C11-00648 LB

4. In order to avoid the costs, expense, and uncertainty of protracted litigation, the Parties to this Consent Decree and Order agree to entry of this Consent Decree and Order to resolve all claims against Defendant raised in the Complaint filed with this Court. Accordingly, the Parties agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning Plaintiff's injunctive relief claims against Defendant.

WHEREFORE, the Parties to this Consent Decree and Order hereby agree and stipulate to the Court's entry of this Consent Decree and Order, which provide as follows:

**SETTLEMENT OF INJUNCTIVE RELIEF:**

5. This Consent Decree and Order shall be a full, complete, and final disposition and settlement of Plaintiff's claims against Defendant for injunctive relief that have arisen out of the subject Complaint.

6. The Parties agree and stipulate that the corrective work will be performed in compliance with the standards and specifications for disabled access as set forth in the California Code of Regulations, Title 24-2, and Americans with Disabilities Act Accessibility Guidelines, unless other standards are specifically agreed to in this Consent Decree and Order.

   a) **Remedial Measures:** The corrective work agreed upon by the Parties is set forth in **Attachment A**, the December 7, 2011 correspondence from Defendant to Plaintiff's counsel in response to the reports of Plaintiff's expert Peter Margen ("December 7 Correspondence"), following the August 23, 2010 and June 15, 2011 inspections of the Castro Valley Branch and the San Leandro Branch. Defendant agrees to undertake all of the remedial work as set forth therein, except that Defendant does not have to modify the entrances to the vaults at the Castro Valley Branch and the San Leandro Branch. Specifically, it is agreed

-3-

CONSENT DECREE & ORDER
Case No. C11-00648 LB

that once access features and policy changes have been made, Defendant agrees to *maintain* these features while Defendant continues to own and/or operate the Castro Valley Branch and the San Leandro Branch as Bank of America customer branches, and it is understood that Defendant shall have no obligation to undertake or complete the following items set forth in the December 7 Correspondence: Item 3.15 for the Castro Valley Branch and Items 3.12 and 3.13 for the San Leandro Branch.

      b)    **Timing of Injunctive Relief**: Defendant will submit plans for all corrective work requiring permits to the appropriate governmental agencies within thirty (30) days of the entry of this Consent Decree and Order by the Court. Defendant will commence work within 30 days of receiving approval from the appropriate agencies. Defendant will complete all work by August 1, 2012. In the event that unforeseen difficulties prevent Defendant from completing any of the agreed-upon injunctive relief, Defendant or its counsel will notify Plaintiff's counsel in writing within fifteen (15) days of discovering the delay. Plaintiff will have thirty (30) days to investigate and meet and confer, and to approve the delay by stipulation or otherwise respond to Defendant's notice. If the Parties cannot reach agreement regarding the delay within an additional fifteen (15) days, Plaintiff may seek enforcement by the Court. Defendant or its counsel will notify Plaintiff's counsel when the corrective work is completed, and in any case will provide a status report to Plaintiff's counsel no later than 120 days from the entry of this Consent Decree.

      c)    Defendant will notify Plaintiff in writing at the end of 120 days from the Parties' signing of this Consent Decree and Order as to the current status of agreed-to injunctive relief, and every 90 days thereafter until all access is provided. If Defendant fails to provide injunctive relief on the agreed upon timetable and/or fails to provide timely written status notification, and Plaintiff

- 4 -

CONSENT DECREE & ORDER
Case No. C11-00648 LB

files a motion with the Court to obtain compliance with these terms, Plaintiff reserves the right to seek additional attorneys' fees for any compliance work necessitated by Defendant's failure to keep this agreement. If the Parties disagree, such fees shall be set by the Court.

**DAMAGES, ATTORNEYS' FEES, LITIGATION EXPENSES, AND COSTS:**

7. The Parties have also reached an agreement regarding Plaintiff's claims for damages and attorneys fees, litigation expenses, and costs. The Parties' settlement will be memorialized in a separate settlement agreement, and, when executed, will constitute a full, complete, and final disposition and settlement of Plaintiff's claims against Defendant for damages and attorneys fees, litigation expenses and costs with regard to this lawsuit.

**ENTIRE CONSENT DECREE AND ORDER:**

8. This Consent Decree and Order and **Attachment A** to this Consent Decree and Order, which is incorporated herein by reference as if fully set forth in this document, constitute the entire agreement between the signing Parties as to injunctive relief. Other than the aforementioned settlement agreement regarding damages and attorneys fees, litigations expenses and costs, no other statement, promise, or agreement, either written or oral, made by any of the Parties or agents of any of the Parties that is not contained in this written Consent Decree and Order, shall be enforceable regarding the matters of injunctive relief, damages, attorneys fees, and/or litigation expenses and costs.

//
//

**CONSENT DECREE AND ORDER BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

9. This Consent Decree and Order shall be binding on Plaintiff, and upon Defendant and any successors-in-interest. Defendant has a duty to so notify all such successors-in-interest of the existence and terms of this Consent Decree and Order during the period of the Court's jurisdiction of this Consent Decree and Order.

**MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO INJUNCTIVE RELIEF ONLY:**

10. Each of the Parties to this Consent Decree and Order understands and agrees that there is a risk and possibility that, subsequent to the execution of this Consent Decree and Order, any or all of them will incur, suffer, or experience some further loss or damage with respect to the lawsuit that is unknown or unanticipated at the time this Consent Decree and Order is signed. Except for all obligations required in this Consent Decree and Order, the Parties intend that this Consent Decree and Order apply to all such further loss with respect to the lawsuit, except those caused by the Parties subsequent to the execution of this Consent Decree and Order. Therefore, except for all obligations required in this Consent Decree and Order, this Consent Decree and Order shall apply to and cover any and all claims, demands, actions, and causes of action by the Parties to this Consent Decree with respect to the lawsuit, whether the same are known, unknown, or hereafter discovered or ascertained, and the provisions of Section 1542 of the California Civil Code are hereby expressly waived. Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER

- 6 -
CONSENT DECREE & ORDER
Case No. C11-00648 LB

## MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

This waiver applies to the injunctive relief aspects of this action only and does not include resolution of Plaintiff's claims for damages, attorneys' fees, litigation expenses, and costs.

11. Except for all obligations required in this Consent Decree and Order – and exclusive of Plaintiff's claims for damages, statutory attorneys' fees, litigation expenses, and costs – each of the Parties to this Consent Decree and Order, on behalf of themselves, their respective agents, representatives, predecessors, successors, heirs, partners, and assigns, releases and forever discharges each other Party and all officers, directors, shareholders, subsidiaries, joint venturers, stockholders, partners, parent companies, employees, agents, attorneys, insurance carriers, heirs, predecessors, and representatives of each other Party, from all claims, demands, actions, and causes of action of whatever kind or nature, presently known or unknown, arising out of or in any way connected with the lawsuit.

## TERM OF THE CONSENT DECREE AND ORDER:

12. This Consent Decree and Order shall be in full force and effect for a period of twelve (12) months after the date of entry of this Consent Decree and Order by the Court, or until the injunctive relief contemplated by this Order is completed and payment for damages, attorneys fees, and litigation expenses and costs is made in full, whichever occurs later. The Court shall retain jurisdiction of this action to enforce provisions of this Consent Decree and Order for twelve (12) months after the date of entry of this Consent Decree and Order, or until the injunctive relief contemplated by this Order is completed and payment for damages, attorneys fees, and litigation expenses and costs is made in full, whichever occurs later.

**SEVERABILITY:**

13. If any term of this Consent Decree and Order is determined by any court to be unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in full force and effect.

**SIGNATORIES BIND PARTIES:**

14. Signatories on the behalf of the Parties represent that they are authorized to bind the Parties to this Consent Decree and Order. This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

**END OF PAGE.
SIGNATURES CONTINUE ON THE NEXT PAGE AND ORDER IS AT THE END OF THE DOCUMENT.**

| | | |
|---|---|---|
| 1 | Dated: 5/7, 2012 | PLAINTIFF CHERYL GREEN |
| 2 | | *[signature]* |
| 3 | | CHERYL GREEN |
| 4 | | |
| 5 | Dated: 5/22, 2012 | DEFENDANT BANK OF AMERICA, NATIONAL ASSOCIATION |
| 6 | | |
| 7 | | By: *[signature]* |
| 8 | | Print name: JOSEPH RYAN |
| 9 | | Title: SVP |

APPROVED AS TO FORM:

Dated: 5/7, 2012

LAW OFFICES OF PAUL L. REIN

*[signature]*
By Catherine Cabalo
Attorneys for Plaintiff CHERYL GREEN

Dated: 5/7, 2012

REED SMITH LLP

*[signature]*
By Craig Baumgartner
Attorneys for Defendant BANK OF AMERICA, NATIONAL ASSOCIATION

## ORDER

Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

Dated: May 25, 2012

*[signature]*

Honorable LAURA BEELER
United States Magistrate Judge

# ATTACHMENT A

# ReedSmith

Reed Smith LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
+1 415 543 8700
Fax +1 415 391 8269
reedsmith.com

Craig N. Baumgartner
Direct Phone: +1 415 659 5916
Email: cbaumgartner@reedsmith.com

December 7, 2011

**By Fax and U.S. Mail**

Paul L. Rein, Esq.
Law Offices of Paul L. Rein
200 Lakeside Drive, Suite A
Oakland, California 94612
Phone: (510) 832-5001
Fax: (510) 832-4787

Re:  **Cheryl Green v. Bank of America, N.A., et al.; Case No. C11-00648 LB**

Mr. Rein:

In response to your letter dated November 8, 2011 ("Injunctive Relief Demand & Draft Consent Letter"), Defendant Bank of America, N.A. ("BANA" or "Defendant") hereby responds to the reports of Peter Margen of Margen + Associates ("Plaintiff's Reports"), prepared on behalf of Plaintiff Cheryl Green ("Plaintiff") related to her lawsuit in the United States District Court for the Northern District of California, *Cheryl Green v. Bank of America, N.A. et al.*, Case No. C11-00648 LB (the "Action").

Plaintiff's Reports purport to outline the findings of site inspections conducted at Bank of America branches in San Leandro and Castro Valley, California, conducted on August 23, 2010 and June 15, 2011. Plaintiff's Reports were mailed to Defendant on August 19, 2011, and according to Plaintiff were provided on a "privileged for settlement" basis. In a letter dated October 5, 2011 responding to Defendant's request for specifications of access violations and/or corrective actions requested pursuant to General Order 56, Plaintiff advised that Plaintiff's Reports constituted a "demand" for corrective action/barrier removal. On November 8, 2011, Plaintiff faxed to Defendant a letter "formally requesting that defendants fulfill all of the recommendations in [Plaintiff's Reports] . . . by May 8, 2012." Plaintiff enclosed with her fax a draft Consent Decree & Order addressing injunctive relief for [Defendant's] review and approval." The draft Consent Decree & Order purports to address Plaintiff's injunctive relief demands, while preserving "Plaintiff's claims for damages, attorneys' fees, litigation expenses, and costs" for "future negotiation or litigation as necessary."

Herein, Defendant includes the following information in response to Plaintiff's Reports: The first column includes information identified in the "item" and "element" columns of Plaintiff's Reports (Castro Valley branch report, pages 4-11; San Leandro branch report pages 5-11) ("Item"). The second column includes the "recommendation" column of Plaintiff's Reports, which Plaintiff identified as her "demand for corrective action" in the letter to Defendant sent on October 5, 2011 ("Plaintiff's Demand"). The third column includes Defendant's response to Plaintiff's demands, including which – if any – actions will be taken; and for those demands which will not be addressed, why no action is legally

NEW YORK ♦ LONDON ♦ HONG KONG ♦ CHICAGO ♦ WASHINGTON, D.C. ♦ BEIJING ♦ PARIS ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ PHILADELPHIA ♦ SHANGHAI ♦ PITTSBURGH
MUNICH ♦ ABU DHABI ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ SILICON VALLEY ♦ DUBAI ♦ CENTURY CITY ♦ RICHMOND ♦ GREECE ♦ OAKLAND

US_ACTIVE-107836289.1-CNBAUMGA 12/7/11 2:39 PM

# ReedSmith

Paul L. Rein, Esq.
December 7, 2011
Page 2

required ("Defendant's Response"). These responses are prepared after consultation with BANA's director of project execution and project manager for the Castro Valley and San Leandro branches. Defendant is open and willing to discuss with Plaintiff a reasonable timeline by which work will be completed.

Additionally, Defendant hereby advises Plaintiff that it does not intend to formally agree to a Consent Decree or similar stipulation that addresses only Plaintiff's injunctive relief claims, but leaves open for "future negotiation or litigation" Plaintiff's claims for "damages, attorneys' fees, litigation expenses, and costs." Defendant does not admit liability to any of the allegations in Plaintiff's Complaint filed in the Action, or otherwise claiming violations of the ADA and/or California civil rights laws. It is Defendant's position that any Consent Decree should be executed concurrently with an agreement between the parties resolving Plaintiff's claims for damages, attorneys' fees, litigation expenses, and costs; and, when executed, said agreement will constitute a full, complete, and final disposition of any and all of Plaintiff's claims against Defendant with regard to this lawsuit.

Very truly yours,

*[signature]*

Craig N. Baumgartner

CNB:rl

*********

## CASTRO VALLEY BRANCH

Bank of America, 3067 Castro Valley Blvd., Castro Valley, California, 94546

| Item | Plaintiff's Demand | Defendant's Response |
|------|--------------------|-----------------------|
| 1.1 Signage "Towing Notification" | Provide the required permanent contact information as per CBC requirements. | Defendant will add contact information to the "Towing Notification" signs. |
| 2.1 Tree Grates (at Front Entrance) – Drop-Off | Fill-in the drop-off with material such as soil to at least 1/2" from the surface of the tree grate as per CBC/ADAAG requirements. | Defendant will add soil to fill-in the drop-off to at least 1/2" from the surface of the tree grate. |
| 2.2 Ramp (off of San Miguel Ave) – Directional Signage | Post directional signage as per CBC/ADAAG requirements. | Defendant will add way-finding signage. |
| 2.3 Rear Entrance Ramp – | Fill the drop-off with material such as soil to at least 1/2" from the surface | Defendant will add soil to fill-in the drop-off to at least 1/2" from the |

**ReedSmith**

Paul L. Rein, Esq.
December 7, 2011
Page 3

| Drop-off | of the tree grate as per CBC/ADAAG requirements. | surface of the tree grate. |
|---|---|---|
| 2.4 Rear Entrance Walkway - Curb | Provide a wheel guide (lower horizontal rail) or a min. 6" high curb along the length of the walkway as per CBC requirements. | Defendant will add a CBC-complaint wheel grade. |
| 3.1 Exterior Exit Door - Tactile (Braille & raised lettering) Exit Signage | Install tactile (Braille & raised lettering) signs at all exits and exit routes within the building as per CBC requirements. | Defendant will add tactile exit signage. |
| 3.2 Entrance – ISA Signage | Replace the ISA sign at the entrance as per CBC/ADAAG requirements. | Defendant will replace the ISA sign. |
| 3.3 Entrance Landing – Clear and Level | Renovate door landing to provide a max. 2% slope in all directions as per CBC/ADAAG requirements or install an automatic door opener as per CBC requirements. | Defendant will replace the concrete in front of door to provide a max. 2% slope. |
| 3.4 Entrance Doors – Opening Force | Adjust or replace the door closer to achieve 5 pounds maximum force or install an automatic door opener as per CBC requirements. | Defendant will replace/adjust the door closer to achieve 5 pounds maximum force. |
| 3.5 Entrance Doors – 90 Degree Opening | Replace or adjust the closer to open at least 90 degrees as per CBC/ADAAG requirements. | Defendant will replace/adjust the door closers to open at least 90 degrees. |
| 3.6 Rear Entrance Door – Opening Force | Adjust or replace the door closer to achieve 5 pounds maximum force or install an automatic door opener as per CBC requirements. | Defendant will replace/adjust the door closer to achieve 5 pounds maximum force. |
| 3.7 Rear Entrance Door – 3 Second Sweep Time | Replace or adjust the closer as per CBC/ADAAG requirements. | Defendant will replace/adjust the door closer as per CBC/ADAAG requirements. |
| 3.8 Writing Counter – Knee Space Clearance | Provide the required knee space clearance as per CBC/ADAAG requirements. | Defendant will install a new writing counter with CBC/ADAAG-compliant knee space. |
| 3.9 Drinking Fountain | Provide an accessible "hi-low" drinking fountain as per CBC requirements. | Defendant will remove the drinking fountain. |
| 3.10 Entry Door – 3 | Replace or adjust the closer as per | Defendant will replace/adjust the door |

**ReedSmith**

Paul L. Rein, Esq.
December 7, 2011
Page 4

| | | |
|---|---|---|
| Second Sweep Time | CBC/ADAAG requirements. | closer as per CBC/ADAAG requirements. |
| 3.11 Entry Door Landing – Strike Slide Clearance (Pull) | Reverse swing of door or renovate area to provide a min. 18" wide strike side clearance as per CBC/ADAAG requirements. | Defendant will reverse swing of door and reconfigure millwork to provide 12" clearance for interior door closer/latch. |
| 3.12 1st Cubicle – Designation | Relocate the ISA sign to the presumed accessible cubicle (adjacent). | Defendant will relocate the tactile sign to the adjacent accessible cubicle. |
| 3.13 2nd Cubicle Door Landing – Strike Side Clearance (Pull) | Reverse swing of door or renovate area to provide a min. 18" wide strike side clearance as per CBC/ADAAG requirements. | Defendant will reverse swing of door and reconfigure millwork to provide 12" clearance for interior door closer/latch. |
| 3.14 2nd Cubicle Door – 3 Second Sweep Time | Replace or adjust the spring hinge as per CBC/ADAAG requirements. | Defendant will replace/adjust the spring hinge as per CBC/ADAAG requirements. |
| 3.15 Vault Room Door Landing – Clear and Level | Lengthen the ramp to provide a max 2% slope in all directions or replace the temporary steel ramp with a portable one that can be put in place when needed as per CBC/ADAAG requirements. | Defendant will not address as demand is not readily achievable because the configuration lacks available space to put in place a ramp (temporary or permanent) with a max 2% slope. |

## SAN LEANDRO BRANCH

Bank of America, 1400 E. 14th Street, San Leandro, California, 94577

| Item | Plaintiff's Demand | Defendant's Response |
|---|---|---|
| 1.1 Signage "Towing Notification" | Provide the required permanent contact information as per CBC requirements. | Defendant will add contact information to the "Towing Notification" signs. |
| 1.2 Accessible Aisle – "Van Accessible" | Provide an 8'-0" wide x 18'-0" long access aisle on the passenger side as per CBC/ADAAG requirements. | Completed. |
| 2.1 East Walkway – Tree Grates | Adjust the tree grates so they are flush with the walking surface and fill the drop with material such as soil to at least 1/2" from the surface of the walkway as per CBC/ADAAG | Defendant will not address as this is not a "path of travel" to which CBC/ADAAG requirements apply. |

Paul L. Rein, Esq.
December 7, 2011
Page 5

**ReedSmith**

| | | |
|---|---|---|
| | requirements. | |
| 2.2 South/East Walkway – Planter Strip Drop-Off | Fill the drop-off with material such as soil to at least 1/2" from the surface of the tree grate as per CBC/ADAAG requirements. | Defendant will add soil to fill-in the drop-off to at least 1/2" from the surface of the tree grate. |
| 2.3 East Walkway | Post directional signage at this location to the designated accessible front entrance (west). | Defendant will add way-finding signage to the front (west) accessible entrance. |
| 3.1 Front Entrance Landing – Clear and Level | Renovate door landing to provide a max. 2% slope in all directions as per CBC/ADAAG requirements or install an automatic door opener as per CBC requirements. | Defendant will install an automatic door opener. |
| 3.2 Front Entrance Doors – Opening Force | Adjust or replace the door closer to achieve 5 pounds maximum force or install an automatic door opener as per CBC requirements. | Defendant will install an automatic door opener. |
| 3.3 Front Entrance – Interior Floor Mat | Secure both floor mats so that they are stable, firm and slip-resistant. | Defendant will add affixed floor mat. |
| 3.4 Rear Entrance Doors – Opening Force | Adjust or replace the door closer to achieve 5 pounds maximum force or install an automatic door opener as per CBC requirements. | The rear-entrance is not an accessible entrance to which CBC requirements apply. Defendant will add way-finding signage to the front (west) accessible entrance. |
| 3.5 Rear Entrance – ISA Signage | Remove the ISA sign at the rear entrance. | Completed. Sign has been removed. |
| 3.6 East Entrance – Directional Signage | Post directional signage to the front entrance (west) as per CBC/ADAAG requirements. | Defendant will add way-finding signage to the front (west) accessible entrance. |
| 3.7 Rear Entrance – Interior Floor Mat | Secure both floor mats so that they are stable, firm and slip-resistant. | Defendant will install new affixed floor mat. |
| 3.8 Interior Stairs – Contrast Striping | Provide a contrast strip at the upper approach and bottom tread as per CBC requirements. | Defendant will add a contrast strip at the upper approach and bottom tread. |
| 3.9 Accessible Teller County Security Panel – G & P | Provide door hardware that does not require tight grasping, tight pinching or twisting of the wrist to operate as | Defendant will replace the door handle. |

Paul L. Rein, Esq.
December 7, 2011
Page 6

# ReedSmith

| | | |
|---|---|---|
| | per CBC/ADAAG requirements. | |
| 3.10 ATM Device – Location | Provide a card reading device at the accessible teller window as per CBC/ADAAG requirements. | Defendant will provide a card reading device at the accessible teller window. |
| 3.11 Door Landing – Depth (Pull) | Renovate area to provide a min. 60" deep landing as per CBC/ADAAG requirements. | Defendant will re-configure area to provide 60" clearance. |
| 3.12 Vault Room Door Landing – Clear and Level. | Lengthen the ramp to provide a max 2% slope in all directions or replace the temporary steel ramp with a portable one that can be put in place when needed as per CBC/ADAAG requirements. | Defendant will not address as demand is not readily achievable because the configuration lacks available space to put in place a ramp (temporary or permanent) with a max 2% slope. |
| 3.13 Steel Ramp - Width | Reconfigure the ramp to provide a min. 32" clear opening as per CBC/ADAAG requirements. | Defendant will not address as demand is not readily achievable because the configuration lacks available space to put in place a min. 32" clear opening. |
| 3.14 Entry Doors – Opening Force | Adjust or replace the door closer to achieve 5 pounds maximum force or install an automatic door opener. | Defendant will replace/adjust the door closer to achieve 5 pounds maximum force. |
| 3.15 Door Bottom – Height | Provide a min. 10" high smooth bottom surface on the push side of the door as per CBC requirements. | Defendant will add a min. 10" high smooth bottom surface on the push side of the door. |